Filed 3/18/24  P. v. Delgado CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGEL DELGADO,<br><br>    Defendant and Appellant. | D081750<br><br><br><br>(Super. Ct. No. FVA1200768) |


APPEAL from an order of the Superior Court of San Bernardino County, Ingrid Adamson Uhler, Judge.  Affirmed.

Law Office of Stein and Markus, Joseph A. Markus, Joseph E. Markus, and Andrew M. Stein, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Lynne G. McGinnis, and Vincent P. LaPietra, Deputy Attorneys General, for Plaintiff and Respondent.

After pleading guilty to second degree murder, Angel Delgado petitioned for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95)[1] on the ground that he lacked the requisite mental state for murder under current law.  The trial court denied the petition following an evidentiary hearing at which it considered, among other things, the declaration Delgado filed in support of his original petition for resentencing.  On appeal, Delgado claims the trial court erred in considering the declaration or, alternatively, that his prior counsel was ineffective for submitting it.  Finding no error by the trial court, and no basis on this appellate record to find ineffective assistance of counsel, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   *The Murder*

In 2012, Delgado, Andrew Pacheco, Rene Calvillo, and Hector Ronces were members of a gang known as DSW, which stands for "[D]on't [S]how [W]eakness."  DSW's primary activities included tagging and assaults, especially shootings.  It was rivals with was a gang called Another Latin Crew (ALC).  DSW claimed Northgate Park in Fontana as its territory, and its tagging in that park included " 'DSW 187,' " " 'Down to shoot whoever,' " and the crossing out of " 'ALC' " next to " '187.' "[2]

On May 26, 2012, Pacheco shot and killed Ashley C. in Northgate Park. While being interviewed by detectives a few months later, Pacheco admitted

---

[1]   All subsequent statutory references are to the Penal Code unless otherwise designated.  Section 1170.95 was renumbered to section 1172.6, without substantive change, effective June 30, 2022.  (Stats. 2022, ch. 58, § 10.)  For clarity, we will refer to the section by its current numbering.

[2]   Section 187 of the Penal Code defines murder.

that he was the shooter, and he explained the incident as follows. Calvillo drove Pacheco, Delgado, and Ronces to Northgate Park to see if any rival gang members were there. Delgado gave Pacheco a gun while they were driving. When they saw a group of people sitting in the park, Pacheco's companions instructed him to find out whether the group belonged to the rival gang and, if so, to shoot them.

Pacheco and Delgado exited the car and walked towards the group. Delgado asked, " 'Where you from?' " which is a common way to confront rival gang members. When someone in the group responded " 'ALC,' " Delgado said, " 'DSW' " and told Pacheco to shoot. Pacheco aimed at the people and fired approximately ten rounds from 20 to 25 feet away, one of which hit Ashley in the head, killing her. Pacheco and Delgado then ran back to the car. All four DSW members returned to a party, where they joked around under the mistaken belief that Pacheco shot a rival gang member.

**B.**   ***The Guilty Plea***

In 2017, the San Bernardino County District Attorney charged Delgado with one count of murder (§ 187, subd. (a)), with allegations that a principal personally discharged a firearm resulting in death (§ 12022.53, subds. (b)–(e)), and that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). Pursuant to a plea bargain in 2018, Delgado pleaded guilty to second degree murder, and the trial court dismissed the allegations and sentenced him to prison for an indeterminate term of 15 years to life.

**C.**   ***Delgado's Petitions for Resentencing***

Effective January 1, 2019, Senate Bill No. 1437 eliminated liability for murder under the natural and probable consequences doctrine and authorized those convicted under that doctrine to file a petition for

resentencing. (Stats. 2018, ch. 1015, §§ 1, subd. (f) & 4.) Delgado filed a such a petition in January 2019, arguing that his murder conviction was invalid because he was merely an aider and abettor without express or implied malice. In support of that petition, Delgado submitted his own declaration (2019 declaration) in which he acknowledged that he was "in some way criminally responsible for [Ashley's] unnecessary and completely avoidable death," but denied that his conduct amounted to murder. He also admitted in the 2019 declaration that he, Pacheco, and Calvillo were members of DSW, and that he knew approaching the group in the park "with someone who was armed created a high likelihood that someone would end up being shot." But his declaration also stated that (1) Delgado did not give the gun to Pacheco; (2) DSW was a tagging crew and Delgado went to Northgate Park on the night of the shooting to tag; (3) the rivalry with ALC never went beyond occasional fist fights; (4) when Delgado asked, "Where you from?" he never thought Pacheco would start shooting; and (5) Delgado never told Pacheco to shoot.

The trial court heard the original petition for resentencing in 2019. Although it found that Delgado made a prima facie showing for relief, it granted the People's motion to strike the petition on the ground that Senate Bill No. 1437 was unconstitutional.

After the constitutionality of Senate Bill No. 1437 was resolved (see *People v. Lamoureux* (2019) 42 Cal.App.5th 241; *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270), Delgado filed a second petition for resentencing in May 2021, again claiming his conviction was improperly based on the natural and probable consequences doctrine. The trial court issued an order to show cause, and the second petition proceeded to an evidentiary hearing over the course of four days in October and November of

4

2022.  Pacheco testified, claiming he lied in his 2012 interview with the detectives.  Attempting to take sole responsibility for the shooting, Pacheco stated that he approached the group in the park by himself, asked them where they were from, shot at them to gain approval, and was not instructed by Delgado to do so.

The trial court denied Delgado's second petition, finding beyond a reasonable doubt that he was guilty of murder as an aider and abettor with either express or implied malice.  It determined that Pacheco lied when he testified at the hearing, and that his earlier statements to law enforcement were more truthful.  It also relied on preliminary hearing testimony regarding Delgado's affiliation with DSW and that gang's activities and rivalry with ALC, as well as the 2019 declaration.

## DISCUSSION

Delgado raises three claims on appeal, all tied to the 2019 declaration. First, he argues the trial court erred in considering the declaration solely based on its presence in the court file.  He contends the declaration was inadmissible because it was not part of the record of conviction, and it lacked sufficient foundation.  Second, asserting that the declaration contained unnecessary and incriminating facts, Delgado claims its submission with his first resentencing petition amounted to ineffective assistance of counsel. Finally, assuming the declaration should not have been considered, Delgado argues there was insufficient evidence that he acted with express or implied malice.

## A.    *Admissibility of the 2019 Declaration*

Delgado's petition is governed by section 1172.6, which authorizes resentencing for a person convicted of murder under the now-invalid natural and probable consequences doctrine.  (*Id.*, subd. (a).)  If a prima facie case for

5

relief is made, the court must issue an order to show cause and hold an evidentiary hearing to determine if the petitioner should be resentenced. (*Id.*, subds. (c) & (d)(1).) The admission of evidence at the hearing "shall be governed by the Evidence Code," and "the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law." (*Id.*, subd. (d)(3).) Additionally, the parties may "offer new or additional evidence to meet their respective burdens." (*Ibid.*)

Delgado's focus on the record of conviction is misplaced, as there is no such limitation at the evidentiary hearing. Nor is prior admission of the declaration required due to the parties' ability to submit new or additional evidence.[3] Instead, admission of the 2019 declaration is governed by the Evidence Code, and those requirements have been satisfied. Because Delgado is a party to this case and the declarant, the 2019 declaration is admissible under the party admission exception to the hearsay rule. (Evid. Code, § 1220.) Additionally, there was a sufficient foundation for the declaration because Delgado admitted its authenticity and acted upon it as authentic. (Evid. Code, § 1414.) Not only did his former counsel file the declaration with his first petition for resentencing, but he also resubmitted it through his current counsel with his second petition and cited to it in his briefing in support of the second petition. (See, e.g., *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1527 [plaintiffs admitted authenticity of deposition transcript relied on by defendant by using portions of the same

---

[3] It appears the trial court did not have occasion to consider the 2019 declaration when ruling on Delgado's first resentencing petition, which was resolved on threshold constitutional grounds. It did not mention the declaration, and only referred to reading and considering the petition authored by Delgado's counsel.

transcript in their separate motion for summary judgment].) Accordingly, the trial court did not err in admitting and considering the 2019 declaration.[4]

## B. *Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.) On direct appeal, deficient performance can only be shown if "(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)[5]

---

[4] Having concluded the declaration was properly admitted, we need not address Delgado's third claim that without this declaration, there was insufficient evidence to support his murder conviction under current law. In any event, Pacheco's pretrial statement that Delgado "just [told] me to shoot," which was admitted as a prior inconsistent statement, was adequate to establish implied malice. (See *People v. Vargas* (2022) 84 Cal.App.5th 943, 954–955.) Although Pacheco's testified inconsistently at the hearing, the court specifically found that testimony not credible.

[5] We acknowledge that Delgado's two petitions for resentencing could be characterized as separate proceedings, in which case the claimed error by counsel would have occurred in the first proceeding, while the claimed prejudice would not have occurred until the second. This issue was not addressed by the parties, and we simply assume without deciding that a claim for ineffective assistance of counsel may be raised under such circumstances.

7

The record does not indicate why Delgado's counsel decided to file the 2019 declaration or draft it in the manner that he did. On the other hand, although the declaration contains some incriminating information, that could have been included to bolster Delgado's credibility and portray him in a more favorable light by showing his acceptance of responsibility.

Further, the 2019 declaration includes a significant amount of information that supports Delgado's defense. It states that he did not give Pacheco the gun or tell him to shoot, and that he was surprised when Pacheco started shooting because they went to Northgate Park to tag. Delgado added that previously, the rivalry with ALC never went beyond occasional fist fights. The declaration therefore contradicts Pacheco's description of the shooting to the detectives in 2012. It also describes a scenario in which Delgado neither knew that Pacheco intended to commit the life-endangering act of shooting at the group in the park, nor intended to aid in such an act, which if found to be credible could negate the required mental state of implied malice for his second degree murder conviction. (See *People v. Reyes* (2023) 14 Cal.5th 981, 991 [" 'The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' "].)

Under these circumstances, the record does not affirmatively disclose that Delgado's counsel had no rational tactical purpose for submitting the 2019 declaration. Delgado has therefore failed to establish deficient performance, which defeats his claim of ineffective assistance of counsel.

8

## DISPOSITION

The order is affirmed.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

DO, J.